Glennon, J.
The petitioner, under a contract entered into with the City of New York, owns and operates underground subways, conduits and ducts for telegraph, telephone and lov, tension electric light and power conductors. This underground system was devised as a means of eliminating overhead wires attached to poles and elevated structures. It consists of banks of ducts of vitrified tile laid end to end at varying depths and encased in a concrete housing extending through the city streets
The contract between petitioner and the city provides that *52 “ spaces in said subways, conduits and duct shall be leased * * It also provides that petitioner “ shall, without charge, supply to the City of New York, all space in said subways, conduits and ducts necessary * * Pursuant to those provisions of the contract petitioner has leased space in its ducts and has supplied the city with the space necessary for the cables used for its police, fire and other departments.
Pursuant to the enabling acts (L. 1933, ch. 815; L. 1934, ch. 302; L. 1934, ch. 873, as amd.), local laws were enacted imposing a tax on all persons doing business within the city. (Local Laws Nos. 9 and 17 [published as No. 18] of 1934, No. 32 of 1935, No. 29 of 1936 and No. 22 of 1937 [constituting articles 8 to 12, inclusive, of title E of chapter 41 of the Administrative Code of the.City of New York].) The tax is to be computed upon the gross receipts from any business or commercial activity as well as certain other lines of endeavor. The laws exempt from taxation the receipts from “ Sales of real estate and/or rents derived from real estate.”
Acting under the provisions of these laws, the comptroller has imposed a tax upon the rentals received by petitioner for the leased space. In addition thereto he has computed a tax upon the reasonable value of the space furnished the city without charge.
The petitioner contends that the moneys received from its tenants are, rents derived from real estate and as such they are exempt from the taxes imposed by the local laws. These laws do not define ‘1 real estate ’ ’. However, subdivision 6 of section 2 of the Tax Law of the State of New York defines “ real estate ” as including “ * * * all supports and inclosures for electrical conductors and other appurtenances upon, above and underground; * * * all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place for conducting steam, heat, water, oil, electricity or any property, substance or product capable of transportation or conveyance therein or that is protected thereby, including the value of all franchises, rights, authority or permission to construct, maintain or operate, in, under, above, upon, or through, any streets, highways or public places, any mains, pipes, tanks, conduits or wires, with their appurtenances, for conducting water, steam, heat, light, power, gas, oil or other substance, or electricity for telegraphic, telephonic or other purposes; * * * A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a ‘ special franchise.’ * * * ”
*53 The petitioner’s subway system comes squarely within the foregoing definition of “ real estate Under that definition the city has taxed petitioner’s property as real estate at the same rate as other real property within the city. For tax purposes, therefore, the city has considered petitioner’s property as real estate.
The local laws, as the city points out in its brief, “ were designed to carry out the policy of relieving the fiscal burden upon real estate by tapping new sources of revenue.” These laws, therefore, were not intended to impose an additional tax on property taxable as real estate. Such an intention is clearly indicated by the exemption of “rents derived from real estate.” In view of the general and unqualified exemption we may not read into it an exception which the framers of the law could have but did not create.
Under the circumstances we are constrained to the view that the comptroller was without power to impose the questioned tax. The determination should, therefore, be annulled to the extent that it assesses a tax deficiency in excess of $243.06, which petitioner admits is a proper charge based upon its nonexempt receipts, ivith $50 costs and disbursements to the petitioner.
Martin, P. J., Townley, Callahan and Peck, JJ., concur.
Determination unanimously annulled to the extent that it assesses a tax deficiency in excess of $243.06, which petitioner admits is a proper charge based upon its nonexempt receipts, with $50 costs and disbursements to the petitioner. Settle order on notice.